Sheri Pan (SBN 316136)
sheri@zwillgen.com
ZWILLGEN LAW LLP
369 Pine Street, Suite 506
San Francisco, CA 94104
Telephone: (415) 590-2335
Facsimile: (415) 636-5965

Jeffrey Landis (*pro hac vice*)
ZWILLGEN PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 706-5203
Facsimile: (202) 706-5298

*Attorneys for Defendant*
*iHeartMedia, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TREVOR HARRIS, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>IHEARTMEDIA, INC.,<br><br>Defendant. | Case No.: 5:25-cv-06038-EKL<br><br>**DEFENDANT IHEARTMEDIA, INC.'S NOTICE OF SUPPLEMENTAL AUTHORITY**<br><br>Judge: Hon. Eumi K. Lee<br>Hearing Date: December 17, 2025<br>Time: 10:00 a.m.<br>Courtroom: 7, 4th Floor |

Pursuant to Local Civil Rule 7-3(d)(2), Defendant iHeartMedia, Inc. ("Defendant") respectfully submits this Notice of Supplemental Authority regarding the pending Motion to Dismiss, Transfer, or Compel Arbitration. See ECF No. 18. Defendant brings to the Court's attention a recent decision by the Honorable Christina A. Snyder in *Rebeka Rodriguez v. Brushfire Records Inc.*, No. 2:25-cv-09797-CAS-PDx, 2025 WL 3692144 (C.D. Cal. Dec. 15, 2025). A copy of the decision is attached hereto as Exhibit 1. The decision is relevant to the Parties' respective arguments regarding whether Plaintiff has alleged a concrete injury sufficient to confer Article III standing.

Dated: December 30, 2025 ZWILLGEN PLLC

By: */s/ Jeffrey Landis*
Jeffrey Landis (*pro hac vice*)
jeff@zwillgen.com

*Attorney for Defendant iHeartMedia, Inc.*

# Exhibit 1

2025 WL 3692144
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

Rebeka Rodriguez
v.
Brushfire Records et al

Case No. 2:25-cv-09797-CAS-PDx
|
Filed 12/15/2025

**Attorneys and Law Firms**

Catherine Jeang, Deputy Clerk, Attorneys Present for Plaintiffs: Not Present

Not Present, Court Reporter / Recorder, N/A, Tape No., Attorneys Present for Defendants: Not Present

Scott J. Ferrell, David W. Reid, Victoria C. Knowles, Pacific Trial Attorneys APC, Newport Beach, CA, for Rebeka Rodriguez.

Robert E. Dugdale, Kendall Brill and Kelly LLP, Los Angeles, CA, for Brushfire Records, Inc.

**Proceedings:** (IN CHAMBERS) - MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (Dkt. 12, filed on November 3, 2025)

The Honorable CHRISTINA A. SNYDER

## I. INTRODUCTION

***1** On July 18, 2025, plaintiff Rebeka Rodriguez ("plaintiff") filed a complaint against defendant Brushfire Records, Inc., a California entity, d/b/a www.jackjohnsomuusic.com ("defendant) in California state court. Dkt. 1-3 at 2. On August 26, 2025, plaintiff amended her complaint. Id.;Dkt. 1-1 ("FAC"). On October 13, 2025, defendant removed the case to this Court. Dkt. 1. Plaintiff asserts three claims for relief: (1) violation of the Wiretap Act, 18 U.S.C. § 2511; (2) violation of California's trap and trace law within the California Invasion of Privacy Act (CIPA), Cal. Penal Code § 638.51; and (3) a California common law privacy tort of intrusion upon seclusion. FAC ¶¶ 35-50.

On November 3, 2025, defendant filed the instant motion to dismiss for lack of standing and failure to state a claim. Dkt. 12 ("Mot."). On November 21, 2025, plaintiff filed an opposition. Dkt. 15 ("Opp."). On December 5, 2025, defendant filed a reply. Dkt. 18 ("Reply").

Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II. BACKGROUND

Plaintiff alleges that defendant is a California-based provider of music merchandise that sells to consumers in California via its website. FAC ¶ 9. Plaintiff is a California resident who works as a "tester" to ensure that companies abide by California privacy laws. Id. ¶¶ 8, 15. Plaintiff alleges that Magnite is a data broker registered with the State of California Department of Justice. Id. ¶ 14.

Plaintiff alleges that defendant installed a Magnite pixel (the "Magnite Spyware") to identify visitors to its website. FAC ¶ 10. According to plaintiff, the Magnite Spyware uses algorithms to analyze internet and device data and predict whether two or more devices are owned by the same person. Id. ¶ 11. Plaintiff alleges that participating websites and apps then cater their advertisements based on a collective knowledge of the user's actions across all of their devices. Id. Plaintiff alleges that Magnite uses data such as cookie IDs, operating system IDs, IP addresses, online registrations, and data from partnering publishers to develop a probability that different devices are shared by the same person. Id.

Plaintiff alleges that Magnite is used for advertising to consumers across devices, where a user is shown an ad on their mobile or tablet device based on websites they visited on a desktop. FAC ¶ 12. Plaintiff alleges that Magnite also uses cross-device analytics for things like location, timing, user behavior, and audience analysis. Id. Plaintiff alleges that the Magnite Spyware collects as much data as it can about an otherwise anonymous visitor to defendant's website and matches it with existing data Magnite has acquired and accumulated about hundreds of millions of Americans. Id. ¶13.

Plaintiff alleges that she visited defendant's website in the last year. FAC ¶ 15. Plaintiff alleges that she was genuinely interested in the goods, services, and information available on defendant's website and "was unaware of the secret spyware being used to surveil visitors and monetize personal information." Id.

***2** The FAC includes an image that allegedly identifies the Magnite tracking scripts operating on defendant's website. FAC ¶ 16. Plaintiff alleges that the Magnite Spyware begins to collect information the moment a user lands on defendant's website before any pop-up or cookie banner advises users of the invasion or seeks their consent; and plaintiff alleges that the Magnite Spyware requests and transmits other identifying personal information to Magnite that allows Magnite to link a user's behavior on defendant's website to the visitor's social media accounts. Id.

Plaintiff alleges that the Magnite tracking pixel, "when used to collect and transmit information about a website visitor's communications," falls within CIPA's definition of a "trap and trace" device. FAC ¶ 17. Plaintiff alleges that the Magnite tracking pixel is a "process" that captures and transmits the IP address of the originating device, device identifiers such as cookies, device IDs, or browser fingerprints, URL referrer paths, headers, and session identifiers, and other dialing, routing, addressing, and signaling information that identifies the source of the user's electronic communication. Id. ¶ 20. Plaintiff alleges that this data is "signaling information" within CIPA's definition of a trap and trace device. Id. ¶ 21. Plaintiff alleges that the Magnite tracking pixel, which identifies the originating digital sender through routing and addressing metadata automatically included in the HTTP(S) request, is analogous to a telephone trap and trace device that captures the originating number. Id. ¶ 21.

Plaintiff alleges that defendant did not obtain plaintiff's express or implied consent to be subjected to fingerprinting and de-anonymization, nor did defendant obtain a Court order allowing it to install the Magnite tracking pixel. FAC ¶ 22.

Plaintiff alleges that defendant's conduct of "luring visitors to its website by falsely promising that it will safeguard their privacy while secretly partnering with a notorious data broker to secretly track each visitor and sell their private information to the highest bidders" amounts to a "bait and switch" scheme and is highly offensive to a reasonable person. FAC ¶ 24. Plaintiff alleges that defendant's conduct is highly offensive because: (1) it breached trust and expectations when it secretly used the Magnite tracking pixel in direct contravention of its explicit assurances to protect plaintiff's privacy; (2) it involves deception and dishonesty that is more offensive than ordinary tracking because it undermines autonomy and consent; (3) it occurs in a private and sensitive setting; (4) it enables unwanted third-party surveillance by allowing cross-site profiling and targeted advertising without plaintiff's consent; and (5) it violates established privacy norms that companies will be transparent about tracking, obtain meaningful consent, and honor their privacy policies. Id.

Plaintiff alleges that defendant's conduct creates a genuine likelihood of serious harm to plaintiff because the personal information defendant harvested via the Magnite tracking pixel includes name, contact information, location data, browsing behavior, device fingerprints, and interests. FAC ¶ 25. Plaintiff alleges that this type of information can and has been used for identity theft, targeted harassment, and manipulative advertising. Id.

Plaintiff alleges that defendant's intrusion is particularly severe because of the context in which it occurred—defendant's own corporate website, which explicitly assured plaintiff that her privacy would be respected. FAC ¶ 31. Plaintiff alleges that defendant's motives and objectives for the intrusion were both deceptive and exploitative, further supporting the offensiveness of the intrusion. Id. ¶ 32. Plaintiff alleges that defendant partnered with a data broker known for trafficking in intimate and geolocation data, and defendant did so to profit off of plaintiff's personal information. Id. Plaintiff alleges that this was a deliberate business strategy by defendant premised on deception, surveillance, and commodification of user trust. Id.

***3** Plaintiff alleges that there are no legitimate or countervailing interests or social norms that render the intrusion inoffensive because the data at issue—"such as real-time location, unique identifiers, or health-related browsing"—is highly sensitive and context-dependent and users cannot consent to a practice that they are not told about. FAC ¶ 33. Plaintiffs allege that there is no legitimate business or social interest in falsely promising privacy protections while secretly violating them. Id.

Plaintiffs allege that the tracking pixel installed on defendant's website was used to intercept the contents of communications between plaintiff and the website in real time, including HTTP requests, URLs visited, and other metadata exchanged as part of plaintiff's interactions with the site, in violation of the Wiretap Act. FAC ¶ 35. Plaintiff alleges that these communications constitute "electronic communications" under 18 U.S.C. § 2510(12). Plaintiff alleges that defendant and/or its agents intentionally intercepted or procured the interception of these electronic communications using the tracking pixel technology without plaintiff's knowledge or consent. Id. ¶ 36. Plaintiff alleges that the interception

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

occurred contemporaneously with the transmission of the communication, satisfying the Wiretap Act's "in transit" requirement. Id. ¶ 37. Plaintiff alleges that no exception under 18 U.S.C. § 2511(2)(d) applies because plaintiff did not consent to the interception, and defendant exceeded any purported authorization by misrepresenting the nature of the data collection and the identity of the third-party recipients. Id. ¶ 38. Plaintiff alleges that defendant acted with a tortious and unlawful purpose when it enabled and permitted a third-party data broker to intercept plaintiff's electronic communications through the use of a tracking pixel embedded on defendant's website because defendant's conduct was for the purpose of enabling commercial exploitation of user data in violation of California common law privacy rights, including intrusion upon seclusion. Id. ¶ 39.

Plaintiff alleges that defendant uses a trap and trace process, as defined in CIPA, on its website by deploying the Magnite tracking pixel on its website because it captures routing, addressing and/or other signaling information of website visitors including plaintiff. FAC ¶ 45. Plaintiff alleges that defendant did not obtain plaintiff's consent or a court order before using trap and trace technology to identify users of its website, and therefore, defendant violated Cal. Penal Code § 638.51. Id. ¶ 46.

Plaintiff alleges that defendant intentionally intruded upon the private affairs, concerns, and seclusion of plaintiff by improperly accessing plaintiff's personal information and using it for improper purposes, including by partnering with a data broker to sell plaintiff's private information to the highest bidder and by targeting plaintiff with behavioral advertising. FAC ¶ 48. Plaintiff alleges that defendant's intrusions upon the private affairs, concerns, and seclusion of plaintiff has been substantial and would be highly offensive to a reasonable person. Id. ¶ 49.

Plaintiff seeks actual and statutory damages, reasonable attorneys' fees and costs, an injunction to prevent the alleged unlawful conduct, and all other relief that would be just and proper as a matter of law or equity. FAC at 11.

## III. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss an action pursuant to Fed. R. Civ. P. 12(b)(1) raises the objection that the federal court has no subject matter jurisdiction over the action. This defect may exist despite the formal sufficiency of the allegations in the complaint. T.B. Harms Co. v. Eliscu, 226 F. Supp. 337, 338 (S.D.N.Y. 1964), aff'd 339 F.2d 823 (2d Cir. 1964). When considering a Rule 12(b)(1) motion challenging the substance of jurisdictional allegations, the Court is not restricted to the face of the pleadings, but may review any evidence, such as declarations and testimony, to resolve any factual disputes concerning the existence of jurisdiction. See McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

***4** Once a Rule 12(b)(1) motion has been raised, the burden is on the party asserting jurisdiction. Sopcak v. N. Mountain Helicopter Serv., 52 F.3d 817, 818 (9th Cir. 1995); Ass'n of Am. Med. Coll. v. United States, 217 F.3d 770, 778-79 (9th Cir. 2000). If jurisdiction is based on a federal question, the pleader must show that he has alleged a claim under federal law and that the claim is not frivolous. See 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1350, pp. 211, 231 (3d ed. 2004).

### B. Federal Rule of Civil Procedure 12(b)(6)

A motion pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in a complaint. Under this Rule, a district court properly dismisses a claim if "there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.' " Conservation Force v. Salazar, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting Balisteri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1988)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[F]actual allegations must be enough to raise a right to relief above the speculative level." Id.

In considering a motion pursuant to Rule 12(b)(6), a court must accept as true all material allegations in the complaint, as well as all reasonable inferences to be drawn from them. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). The complaint must be read in the light most favorable to the nonmoving party. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). However, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Ashcroft v. Iqbal,


© 2025 Thomson Reuters. No claim to original U.S. Government Works.

556 U.S. 662, 679 (2009); see Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

Unless a court converts a Rule 12(b)(6) motion into a motion for summary judgment, a court cannot consider material outside of the complaint (e.g., facts presented in briefs, affidavits, or discovery materials). In re American Cont'l Corp./Lincoln Sav. & Loan Sec. Litig., 102 F.3d 1524, 1537 (9th Cir. 1996), rev'd on other grounds sub nom Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998). A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201. In re Silicon Graphics Inc. Sec. Litig., 183 F.3d 970, 986 (9th Cir. 1999); see Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

***5** As a general rule, leave to amend a complaint which has been dismissed should be freely granted. Fed. R. Civ. P. 15(a). However, leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." Schreiber Distrib. Co. v. Serv-Well Furniture Co., 806 F.2d 1393, 1401 (9th Cir. 1986).

## IV. DISCUSSION

Defendant argues that plaintiff's FAC should be dismissed because plaintiff's allegations fail to establish Article III standing and fail to state a claim. Mot. at 4.

### A. Standing

To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." TransUnion LLC v. Ramirez, 594 U.S. 413, 423 (2021) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992)).

Here, defendant focuses on the injury requirement. Defendant argues that plaintiff, as a self-identified privacy "tester," cannot establish standing based on a "deliberately manufactured [ ] supposed privacy injury," because she lacked a reasonable expectation of privacy. Mot. at 9. Defendant argues in the alternative that plaintiff fails to allege a concrete injury. Id. Defendant argues that plaintiff does not allege any facts about her visit to defendant's website or any personal information collected from her that would rise to the level of an invasion of her privacy. Id. Defendant argues that the FAC contains only generalized claims about information a Magnite pixel may be capable of collecting, untethered to plaintiff's own experience. Id. Defendant argues that without alleging that specific personal information was collected or disclosed as a result of plaintiff's visit to the website, plaintiff lacks standing. Id. at 10. Furthermore, defendant argues that plaintiff's "sparse allegations about a single visit to [defendant's website] ... supports at best the inference that her IP address and perhaps similar metadata may have been collected on [defendant's website]." Id. Defendant contends that the collection of metadata, such as IP addresses, that is routinely exchanged during browsing, does not implicate a privacy interest or constitute a concrete injury. Id.

In opposition, plaintiff argues that she can have standing, even as a "tester." Opp. at 1. Plaintiff argues that a self-inflicted injury does not defeat standing unless "the injury is so completely due to the plaintiff's fault as to break the causal chain." Id. (citing 13A Charles A. Wright, Arthur R. Miller, and Edward H. Cooper, Fed. Prac. & Proc. Juris. § 3531.5 n.70 (3d ed. June 2024 Update). Plaintiff argues that the foreseeability of monitoring is insufficient to establish implied consent. Opp. at 4-5. Plaintiff also disputes defendant's contention that she lacks a reasonable expectation of privacy in her IP address, citing California's Electronic Communications Privacy Act, Cal. Penal Code § 1546(d) and (h), which precludes the government from compelling internet service providers to provide a user's IP addresses without a warrant or other limited exception, and the California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.140(v)(l), which recognizes "[i]dentifiers such as a[n] Internet Protocol address," "Geolocation data," and "Internet or other electronic network activity information, including, but not limited to, browsing history, search history, and information regarding a consumer's interaction with an internet website application, or advertisement," as a consumer's "personal information." Opp. at 6. Plaintiff argues that data brokers embed their code on defendant's website so that their third-party cookies are downloaded onto the devices and browsers of visitors to defendant's website, to harvest visitor data, build profiles of consumers, and monetize

segmented audiences via targeted advertising and marketing campaigns. Id. at 7-8. Plaintiff argues that, after she visited the website, she determined that defendant failed to provide a "Notice of Collection" of personal information in compliance with the CCPA and other California regulations, and that this violation of a statutory obligation is highly offensive to a reasonable person. Id. at 9.

***6** In reply, defendant argues that while plaintiff's "tester" status does not automatically defeat standing, it does not automatically confer it either. Reply at 3. Defendant clarifies that plaintiff's failure to plead standing does not result from her status as a "tester," but rather her inability to articulate a protectable privacy interest to establish a concrete and particularized injury-in-fact. Id. Defendant nonetheless maintains that plaintiff had no expectation of privacy when she allegedly visited defendant's website because as a "tester," she had an understanding that her privacy would be compromised by the tracking software allegedly deployed on the website. Id. at 6. And defendant argues that even if plaintiff was not a "tester," plaintiff's generalized allegations about what a Magnite pixel can allegedly do in the abstract, without any allegations as to what the Magnite pixel allegedly installed on defendant's website did to harm plaintiff, are insufficient to establish standing. Id. Defendant also argues that plaintiff's references to the definitions of personal information under California statutes are irrelevant to the standing inquiry because a state statute cannot confer Article III standing. Id. at 7.

First, the Court finds that plaintiff's status as a "tester" "casts doubt on any suggestion that she was surprised" by defendant's alleged privacy violations, but that fact alone does not preclude her from establishing Article III standing to sue. Byars v. Sterling Jewelers, Inc., No. 5:22-CV-01456-SB-SP, 2023 WL 2996686, at *3 (C.D. Cal. Apr. 5, 2023). In a similar case brought by the same plaintiff, the court found that as "a tester that visited and entered information into Defendant's website *expecting the information to be accessed, recorded, and disclosed*, she cannot claim an injury when her expectations were ultimately met." Rodriguez v. Autotrader.com, Inc., No. 2:24-CV-08735-RGK-JC, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) (emphasis added); see also Rodriguez v. Autotrader.com. Inc., No. 2:24-CV-08735-RGK-JC, 2025 WL 1122387, at *3 (C.D. Cal. Mar. 14, 2025) ("Plaintiff's injury squarely depends on her expectations, as an invasion of privacy requires a reasonable expectation of privacy to have been violated. And as a tester seeking to file lawsuits for invasions of her privacy, she had no expectation of privacy, and thus, no injury in fact."). In contrast, here, plaintiff alleges that she was "genuinely interested" in visiting defendant's website and "unaware of the secret spyware being used to surveil visitors and monetize personal information." FAC ¶ 15. At the motion to dismiss stage, the Court must accept as true all material allegations in the FAC. Pareto v. FDIC, 139 F.3d 696, 699 (9th Cir. 1998). Accepting plaintiff's factual allegations as true, plaintiffs status as a "tester" did not affect her expectations of privacy when using defendant's website.

Second, the Court finds that plaintiff nonetheless fails to allege a concrete injury, and therefore she lacks standing to sue. Assuming *arguendo*, that plaintiff has stated claims for violations of 18 U.S.C. § 2511 and Cal. Penal Code § 638.51, those statutory violations would not be sufficient to establish Article III standing. See TransUnion LLC v. Ramirez, 594 U.S. 413, 427 (2021) ("Only those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court."); Spokeo, Inc. v. Robins, 578 U.S. 330, 341 (2016) ("Article III standing requires a concrete injury even in the context of a statutory violation.").

In considering a plaintiff's standing to sue for statutory violations, courts must "assess whether an individual plaintiff has suffered a harm that has traditionally been actionable in our nation's legal system." Popa v. Microsoft Corp., 153 F.4th 784, 791 (9th Cir. 2025). "That inquiry asks whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." TransUnion, 594 U.S. at 414. Here, plaintiff's FAC asserts an invasion of her privacy rights—specifically the common law privacy tort of intrusion upon seclusion. FAC ¶¶ 39, 48, 49. Indeed, the Ninth Circuit recognizes that "[v]iolations of the right to privacy have long been actionable at common law." Eichenberger v. ESPN, Inc., 876 F.3d 979, 983 (9th Cir. 2017). The Supreme Court also recognizes that intangible harms, such as intrusion upon seclusion, can be concrete. TransUnion, 594 U.S. at 425 (citing Gadelhak v. AT&T Services, Inc., 950 F.3d 458, 462 (7th Cir. 2020)). But a conclusory allegation that defendant has intruded upon her seclusion would not be enough to establish standing. Plaintiff must adequately allege harm from the statutory violations that is analogous to the of the common law tort of intrusion upon seclusion.

***7** Plaintiff's only allegation about her own interactions with defendant's website is that she visited the website in the last year. FAC ¶ 15. The remainder of the FAC is filled with

 © 2025 Thomson Reuters. No claim to original U.S. Government Works. 

vague and generalized allegations of the type of data that the Magnite tracking pixel is capable of collecting from website visitors. See e.g., FAC ¶ 16 ("the Magnite Spyware (1) begins to collect information the moment a user lands on the Website before any pop-up or cookie banner advises users of the invasion or seeks their consent; and (2) requests and transmits other identifying personal information to Magnite that allows Magnite to link a user's behavior on Defendant's website to the visitor's social media accounts."); FAC ¶ 20 ("The Magnite Tracking Pixel ... captures and transmits the IP address of the originating device, device identifiers such as cookies, device IDs, or browser fingerprints, URL referrer paths, headers, and session identifiers, and other dialing, routing, addressing, and signaling information that identifies the source of the user's electronic communication."). At most, the Court can reasonably infer from plaintiff's sparse allegations as to her activity on defendant's website that plaintiff's IP address and other device identifiers were captured by the Magnite pixel on defendant's website.

Defendant's acquisition of plaintiff's IP address and other device identifiers from her visit to defendant's website "does not cause the kind of harm that can be vindicated in federal court." Carolus v. Nexstar Media Inc., No. 24-CV-07790-VC, 2025 WL 1338193, at *1 (N.D. Cal. Apr. 9, 2025) (citing United States v. Forrester. 512 F.3d 500, 509-11 (9th Cir. 2008)); see also Mitchener v. CuriosityStream, Inc., No. 25-CV-01471-NW, 2025 WL 2272413, at *5 (N.D. Cal. Aug. 6, 2025), appeal dismissed, No. 25-4990, 2025 WL 3191910 (9th Cir. Oct. 23, 2025) ("If Defendant only collects information regarding the 'metadata' of the communication, Plaintiff's right to privacy is not invaded because he has no expectation of privacy as to that type of data (e.g., his IP address or general geographic location).")).

Plaintiff argument that defendant's collection of her IP address without notice or consent, in violation of state regulations, is highly offensive does not substitute for the constitutional standing requirement that she allege a concrete injury. Plaintiff's citations to Gabrielli v. Haleon US Inc., No. 25-CV-02555-WHO, 2025 WL 2494368 (N.D. Cal. Aug. 29, 2025) are unpersuasive. Opp. at 10, 19. Haleon is factually distinct. There, Gabrielli alleged that Haleon ignored his affirmative rejection of cookies and continued to place and/or transmit cookies along with user data to third parties on Gabrielli's device. Haleon, No. 25-CV-02555-WHO, at *6. Furthermore, the court noted the increased privacy implications at stake because "Haleon's websites involve healthcare." Haleon, No. 25-CV-02555-WHO, at *7. Here, plaintiff's complaint is more similar to Gabrielli v. Insider. Inc., where the same plaintiff alleged that Insider's website installed a third-party tracker on his browser without his consent. No. 24-CV-01566 (ER), 2025 WL 522515 (S.D.N.Y. Feb. 18, 2025). In Insider, the court found that Gabrielli lacked Article III standing to sue for a violation of CIPA based on an analogy to the common law tort of intrusion upon seclusion because "the collection of an IP address [by a website] would not be considered an intrusion that would be 'highly offensive to a reasonable person.' " Id. at *6.

In re Facebook explains that a right to privacy "encompasses the individual's control of information concerning his or her person" and is violated when the defendant "reveal[s] an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives." 956 F.3d at 598-99. Here, without any allegations as to what of plaintiff's personal information, beyond her IP address, was collected by defendant, the Court cannot identify any harm to her privacy, much less identify a highly offensive intrusion. See Hughes v. Vivint, Inc., No. CV 24-3081-GW-KSX, 2024 WL 5179916, at *4-5 (C.D. Cal. July 12, 2024) ("As Plaintiff does not clearly allege what personalized information of hers was actually collected, she does not identify any harm to her privacy."); see also Mikulsky v. Noom, Inc., 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (granting motion to dismiss for lack of standing because "the Court is unable to determine whether the 'personal information' Plaintiff inputted is protected or whether it was merely information akin to basic contact information that would not trigger a protectable privacy interest"). Plaintiff does not explain how defendant's use of the Magnite pixel on its website "caused her to experience any kind of harm that is remotely similar to the 'highly offensive' interferences or disclosures that were actionable at common law." Popa v. Microsoft Corp., 153 F.4th 784, 791 (9th Cir. 2025). "In sum, Plaintiff's bare allegation that she visited Defendant's website is insufficient to establish injury in fact, and therefore insufficient to establish standing." Heiting v. FKA Distrib. Co., No. 2:24-CV-07314-HDV-AGR, 2025 WL 736594, at *3 (C.D. Cal. Feb. 3, 2025).

***8** Accordingly, the Court **DISMISSES** plaintiff's FAC as to all of plaintiff's claims with leave to amend.

### B. Failure to State a Claim

Because the Court has determined that the FAC will be dismissed due to inadequate allegations as to the basis for

plaintiff's standing, whether the FAC has failed to state a claim is **MOOT**. These issues may be renewed in a motion to dismiss any second amended complaint. [1]

**V. CONCLUSION**

In accordance with the foregoing, the Court **GRANTS** defendant's motion to dismiss plaintiff's FAC, with leave to amend. Plaintiff shall file any second amended complaint on or before January 5, 2026.

IT IS SO ORDERED.

00 : 00

Initials of Preparer CMJ

**All Citations**

Slip Copy, 2025 WL 3692144

## Footnotes

1 Without making any determination of the merits of defendant's arguments on this issue, it is recommended that plaintiff consider them in connection with the preparation of any Second Amended Complaint in order to promote a more efficient resolution of this matter.

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.