United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

TREVOR HARRIS,
Plaintiff,
v.
IHEARTMEDIA, INC.,
Defendant.

Case No. 25-cv-06038-EKL

**ORDER DENYING MOTION TO DISMISS**

Re: Dkt. No. 18

In this putative class action, Plaintiff Trevor Harris alleges that Defendant iHeartMedia, Inc. ("iHeart") places third-party internet trackers on its users' browsers, causing their browsers to send identifying information to various third parties, and that in doing so, iHeart violates section 638.51(a) of the California Invasion of Privacy Act ("CIPA"). *See* Cal. Penal. Code § 638.51(a) (prohibiting any person from "install[ing] or us[ing] a pen register or trap and trace device without first obtaining a court order"). Defendant moves to dismiss the complaint, arguing that Plaintiff has not alleged an Article III injury in fact and that the trackers on Defendant's website do not constitute "pen registers" within the meaning of CIPA. *See* ECF No. 18 ("Mot."). On December 17, 2025, the Court heard argument and announced its ruling on the motion to dismiss, stating that a written order would issue. ECF No. 29. The Court now issues its written decision. For the following reasons, Defendant's motion to dismiss is DENIED.[1]

**A. Article III Standing**

Plaintiff has sufficiently alleged an Article III injury in fact. To satisfy the injury in fact

[1] The Court assumes the reader's familiarity with the facts of the case and the applicable legal standards. This Order references only those facts that are relevant to the Court's holding.

requirement, Plaintiff must allege an injury that is "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (cleaned up). Last year, in *Popa v. Microsoft Corporation*, the Ninth Circuit considered the applicable standard in internet tracking cases. 153 F.4th 784 (9th Cir. 2025). It explained that "history [is] the touchstone for concreteness" and that "courts should assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* at 789.

The harm here is an invasion of privacy, specifically interference with Plaintiff's ability to "control [his] personal information." Compl. ¶¶ 168, 171, 182, ECF No. 1. The Supreme Court has held that "both the common law and the literal understandings of privacy encompass the individual's control of information concerning his or her person," and that the "extent of the protection accorded a privacy right at common law rested in part on the degree of dissemination of the allegedly private fact." *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763-64 (1989) (explaining that there is a difference between "scattered disclosure of the bits of information contained in a rap sheet and revelation of the rap sheet as a whole").

Here, the degree of dissemination of Plaintiff's information is broad. Plaintiff alleges that iHeart installs multiple third-party trackers onto its users' browsers when they visit iHeart's website. *See, e.g.*, Compl. ¶¶ 56. 60, 99, 117. The trackers store unique identifiers on the user's browser, and cause the browser to send identifying information, including the user's IP address and device metadata, to the third parties. *Id.* ¶ 26. Using IP addresses, device metadata, and unique identifiers, the third parties allegedly track users "across the internet" and "build[] comprehensive user profiles that include an assortment of information, interests, and inferences." [2] *Id.* ¶ 156. The third parties then "sync" the user's information with data held by other data brokers to build the most comprehensive user profiles possible. *Id.* ¶¶ 94, 112, 135. Finally, through a

[2] Plaintiff further alleges that collection of the user's IP address is important to the profile building process because it allows the third parties to link a user's history even if the user clears its "cookies," which contain the individual tracker's unique identifier. *Id.* ¶ 176 ("Consequently: (i) users are not able to abolish their assigned userIDs even after carefully erasing their set cookies, and (ii) trackers are enabled to link user's history across state resets.").

complex bidding process known as "Real Time Bidding,"[3] the de-anonymized user profiles are auctioned to potential advertisers, with the highest bidder securing the right to deliver an ad to a particular user. *Id.* ¶¶ 156, 158, 160-168. Naturally, more information yields higher bids. *Id.* ¶ 165. Thus, Plaintiff asserts that he and other website users are harmed not just by the collection of data, but by being identified and "linked to comprehensive, non-anonymous profiles" that "are offered up for sale to a near endless supply of advertisers without knowledge or consent." Opp. at 13, ECF No. 20.

The Court finds that Plaintiff has alleged the violation of a privacy interest that bears a "close relationship" to traditional harms – *i.e.,* the loss of the ability to control information about himself and to avoid the broad dissemination of that information. This ruling is consistent with other recent district court cases in the Ninth Circuit. *See Camplisson v. Adidas Am., Inc.*, --- F. Supp. 3d ---, No. 25-CV-603-GPC-KSC, 2025 WL 3228949, at *6 (S.D. Cal. Nov. 18, 2025) (holding that the violation of the right to control one's information is "in accordance with traditional privacy harms and is concrete"); *Deivaprakash v. Conde Nast Digital*, No. 25-CV-04021-RFL, 2025 WL 2779193, at *2 (N.D. Cal. Sept. 30, 2025) ("*Deivaprakash II*") (holding that the use of internet trackers to "generate profiles reflecting . . . personal information" is a privacy injury with "historical analogues"); *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1087 (N.D. Cal. 2025) ("[T]he tracking of individuals' activity across thousands of websites, combined with extensive offline records gathered over decades, to generate uniquely identifying profiles on those individuals is sufficient to allege intrusion into privacy."); *Gabrielli v. Haleon US Inc.*, No. 25-CV-02555-WHO, 2025 WL 2494368, at *6 (N.D. Cal. Aug. 29, 2025) (holding that "depriv[ing] [the plaintiff] control of personal information regarding his digital activity and profile are enough to show a concrete injury to his right to privacy").

*Popa* does not require a different outcome. First, the extent of tracking in *Popa* was significantly less intrusive than the tracking at issue in this case. In *Popa*, the defendant used

---

[3] Real Time Bidding is an "online advertising auction that uses sensitive personal information to facilitate the process to determine which digital ad will be displayed to a user on a given website or application." Compl. ¶ 160.

session-replay technology to track information about the plaintiff's browsing patterns and mouse movements *while on the defendant's website*. *Popa,* 153 F.4th at 786. The Ninth Circuit compared this to a "store clerk[] observing shoppers . . . to identify aisles that are particularly popular or to spot problems that disrupt potential sales." *Id.* at 791. The scope of tracking at issue here is less like a "store clerk[] observing shoppers," and more like the "cradle-to-grave profile" discussed in *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 599 (9th Cir. 2020). *See Gilligan v. Experian Data Corp.*, No. 25-CV-02873-RFL, 2026 WL 32259, at *2-3 (N.D. Cal. Jan. 6, 2026) (finding a concrete Article III injury where the "scope of the alleged tracking . . . is materially more invasive than the limited tracking at issue in [*Popa*]"); *Deivaprakash II*, 2025 WL 2779193, at *1-2 (finding allegations regarding identical technology would satisfy Article III injury under *Popa*). Moreover, *Popa* did not involve any dissemination of the "session-replay" beyond Defendant's own use. *Id.* at 787 (explaining that the session-replay provider "create[s] a video replay of the user's behavior on the website to provide it to [the website owner] for analysis"). Therefore, the scope of tracking and dissemination at issue in this case is not analogous to the tracking in *Popa*.

* * *

For the foregoing reasons, the Court finds that Plaintiff has sufficiently alleged the violation of a privacy interest and has demonstrated Article III standing.[4]

**B. CIPA Pen Register**

Plaintiff sufficiently alleges that the third-party trackers constitute pen registers under section 638.51(a) of CIPA. A pen register is defined as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or

[4] Defendant also argues that Plaintiff does not allege an actionable CIPA injury. Mot. at 24. However, for the same reasons Plaintiff has alleged an Article III injury, he has also alleged a statutory CIPA injury. *See Deivaprakash v. Conde Nast Digital*, 798 F. Supp. 3d 1100, 1106 (N.D. Cal. 2025) ("*Deivaprakash I*")(finding the plaintiff sufficiently alleged a statutory CIPA injury in "in the form of an invasion of privacy"); *Carreiro v. EHM Productions, Inc.*, No. 24STCV2462, 2024 WL 5679124, at *2 (Cal. Super. Dec. 11, 2024) (explaining that CIPA "codified a substantive right [] to privacy" and that violations of CIPA involve a "de facto" statutory injury).

facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b). Defendant does not dispute that the trackers are a "device or process" under CIPA nor that the IP address and other metadata constitute "dialing, routing, addressing, or signaling" information. Instead, Defendant argues that the trackers are not pen registers because they only "collect information about the *source* of communications made to the Website (i.e., his device), rather than the *outgoing* dialing, routing, addressing, or signaling information sent *from that source*[.]" Mot. at 18-19 (explaining that historically pen registers are used by law enforcement to record what phone numbers a particular telephone called – not to identify the *source* of an outgoing call).

This exact argument was rejected in *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929 (N.D. Cal. 2024). There, the court explained:

> Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register. . . . By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to [the defendant's] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue.

*Id.* The overwhelming majority of courts that have considered this question have similarly concluded that third-party internet trackers meet the technical requirements of a pen register under CIPA. *See, e.g., Gabrielli*, 2025 WL 2494368, at *11 ("[The] argument [that third-party internet trackers are not pen registers under CIPA] has been considered and rejected multiple times."); *Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *3-4 (N.D. Cal. Dec. 12, 2024) (holding internet tracking technology, including one of the trackers at issue here, constitute pen registers under CIPA); *Bradshaw v. Lowe's Companies, Inc.*, No. 25CV0742 DMS (MMP), 2025 WL 3171740, at *7 (S.D. Cal. Nov. 12, 2025) ("Defendants' first argument is the trackers are neither pen registers nor trap and trace devices under CIPA. . . . [T]he case law is not in Defendants' favor. Indeed, it uniformly supports the opposite outcome."); *Xu v. Reuters News & Media, Inc.*, No. 25CV459918, 2025 WL 3035016, at *3-4 (Cal. Super. Oct. 24, 2025) (holding identical tracking technology constitutes a pen register). The Court follows suit

and adopts the reasoning set forth in these cases. Thus, the Court finds Plaintiff has alleged that the third-party trackers constitute pen registers under CIPA.

***

For the foregoing reasons, Defendant's motion to dismiss is DENIED.

**IT IS SO ORDERED.**

Dated: January 29, 2026

Eumi K. Lee
United States District Judge